Mike CARVER, b/n/f Mrs. Peggy
Carver, Plaintiff-Appellee,

v.

Estelle RADER, Defendant-Appellant.

Court of Appeals of Tennessee,
Middle Section.

July 25, 1975.

Certiorari Denied by Supreme Court
Dec. 5, 1975.

William B. Bruce and Ted F. Walker,
Nashville, for plaintiffs-appellees.

Joe P. Binkley, Jr., Nashville, for defend-
ant-appellant.

## OPINION

TODD, Judge.

The defendant, Estelle Rader, has appeal-
ed from a non-jury judgment against her
and in favor of the plaintiff, Mike Carver,
in the amount of $150.00 for breach of
contract in respect to a bail bond.

In August, 1973, the plaintiff, Mike Car-
ver, a minor, was arrested for murder. His
mother telephoned the office of the defend-
ant, Estelle Rader d/b/a Rader Bonding
Company and the person answering the
phone informed her that Rader Bonding Co.
would execute a bail bond of $2,500.00 and
would "stay on the bond until trial" for a
fee of $265.00. The fee was paid and a bail
bond was executed for appearance before
the Juvenile Court and the plaintiff was
released from custody. When plaintiff ap-
peared before the Juvenile Judge, the case

was transferred to the Criminal Court for trial; and the plaintiff was remanded to the custody of the sheriff. The Juvenile Judge set no bond, but referred the matter of bond to the Attorney General who designated a bond of $4,000.00 which was never made.

Thereafter, for about six months, the minor plaintiff remained in the custody of the sheriff awaiting trial. Finally, counsel for plaintiff obtained an order from the Criminal Court authorizing a bail bond of $3,000.00. The employees of defendant were requested to execute the $3,000.00 bond for an additional fee of $50.00, based upon the difference of $500.00 between the $2,500.00 Juvenile Court bond, already paid for, and the $3,000.00 bond demanded by the Criminal Court. Defendant's employees refused to execute the Criminal Court bond for additional premium of $50.00.

This suit was brought upon a General Sessions Civil Warrant charging:

"Breach of contract entered into by the parties on or about the 14th of August, 1973, for making of Defendant's criminal bond. Defendant made the Plaintiff bond of $2,500.00 initially for 10% of that amount plus a $15.00 service charge or $265.00 in total. Plaintiff bond is now set at $3,000.00 and Defendant refuses to continue on the bond for an additional 10% ($50.00) of the increase in the bond and refuses to return the Plaintiff's $265.00 so he can make bond with another bonding company."

The General Sessions Judge awarded plaintiff judgment for $79.50. Upon appeal to the Circuit Court, the Circuit Judge, sitting without a jury rendered judgment for the plaintiff in the amount of $150.00, from which judgment the defendant appealed to this Court.

Pertinent portions of applicable sections of Tennessee Code Annotated are as follows:

"*40–1223. Duration of bond or recognizance.*—Where the defendant in a criminal case, executes a bond, or recognizance, before any court or other person authorized by law to take the same, for his personal appearance before a court, to answer a criminal charge, the said bond or recognizance shall be valid and binding upon the defendant and his sureties thereon, for the defendant's personal appearance before the court from term to term until the case is finally terminated or stricken from the docket, and the defendant discharged by the court; . . provided that the sureties on said bond may surrender the prisoner and be released on said bond as now provided.

"*40–1415. Reduction or refund of premium on bail, bond or surety.*—Whenever any professional bondsman as defined in § 40–1401 furnishes bail, makes bond or furnishes surety for the appearance, before any court in this state, of any person charged with a criminal offense or a violation of any law, by means of a *contract for a specified period of time,* in which the bondsman acts as surety for such appearance, *the premium* on such contract *shall be reduced or refunded upon surrender* of the person charged with such criminal offense or violation of a law in an amount *in direct proportion of the percentage of the unexpired term of the contract* to the total amount of the premium; unless such person is arrested on an additional criminal charge while released on bail or *if the bond* or surety *is* forfeited or *revoked* by the court having jurisdiction of such person. (Emphasis supplied)

Defendant-appellant insists that, when bond is made for appearance before the Juvenile Court and said Court elects to remand the accused to the custody of the sheriff awaiting trial before the Criminal Court, the appearance bond is "revoked," thereby terminating all liability of the surety, either to the state for appearance of the accused, or to the accused for partial refund of bond premium under § 40–1415, supra. The obligation of a surety *to the state* upon a bail bond might be terminated by "revok-

ing" the bond and remanding the accused to custody. Such action by the court might suspend the contractual obligation of the bondsmen to "stay on the bond."

■ However, such action would not terminate the agreement between the parties, recited supra, that the Rader Bonding Company would "stay on the bond until trial." Said agreement did not stipulate trial in any particular court, and the obligation continued "until trial" in whatever court the trial might be held.

If the Juvenile or Criminal Judge had set a bond in the same amount ($2,500.00) to secure appearance before the Criminal Court, it would have been the contractual duty of Rader Bonding Company to "stay on the bond" by executing the necessary assurance for appearance before the Criminal Court and that without additional charge; and the obligation to furnish a $2,500.00 bond remained effective "until trial."

It is noteworthy that defendant was offered the opportunity of executing the large ($3,000.00) bond for an additional proportionate fee. One of defendant's employees testified:

"I believe it was sometime in March Mr. Bruce contacted me and asked me to go back on the bond. At this time I told him I would look into the matter. Well, the next day I looked into the matter and discovered who it was and the circumstances of it and I discovered that this boy had been put in jail by Judge Jenkins and turned over to the Sheriff's Department over six months earlier and the bond had been set by Mr. Shriver's office at $4,000.00 and he said he had it reduced to $3,000.00 at this time and I couldn't make a $3,000.00 bond for $50.00 over six months later.

Q. What would have been the difference six months later making the bond and making it the day after?

A. Well, if the defendant had had an attorney during his preliminary hearing and they had contacted me within a rea-

sonable length of time or made some arrangements we would have considered this but six or seven months later they hire an attorney and come back with all this, then we don't feel we're obligated and we're not obligated in the first place if the judge revokes the bond."

Authorities cited by appellant are distinguishable. *State v. Romaine*, 47 Okl. 138, 148 P. 79 (1915), involved release of bondsman by *trial* and *sentence*.

In *Reed v. State*, 245 Ala. 173, 16 So.2d 310 (1944); *Suit v. State*, 212 Ark. 584, 207 S.W.2d 315 (1947), and *State v. Radcliffe*, 242 Iowa 572, 44 N.W.2d 646 (1950), the defendant had been *tried, convicted* and *sentenced*.

In the present case, nothing had occurred except a preliminary hearing at which the Juvenile Judge determined, as provided by statute, that there would be no trial in Juvenile Court but that trial would be in Criminal Court.

Appellant cites authority for exoneration of the surety (from the obligation of the bond) by the remand of the accused to custody; however, the present case does not involve the liability of the surety *upon the bond* but the contractual obligation of the surety to the accused to *stay on the bond* until trial.

■ The obligation to "stay on the bond" was not terminated by the action of the Juvenile Judge in remanding without bail. When bail was again allowed, the obligation to "stay on the bond" required the defendant to furnish bond to the extent of $2,500.00 "until trial." If the defendant was unwilling to furnish the entire $3,000.00 bond, defendant should have tendered the agreed $2,500.00 bond so that the remaining $500.00 bond might be acquired otherwise. Failing to tender performance of the contract, defendant is certainly obligated to make a reasonable partial refund.

Defendant, in effect, "surrendered" the plaintiff prior to the expiration of the "specified period of time" provided by the contract, hence a partial refund is in order under the statute, quoted supra.

The $150.00 partial refund as ordered by the Circuit Judge appears to be fair and reasonable.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against appellant.

Affirmed.

SHRIVER and DROWOTA, JJ., concur.