William A. YORDING, Continental Surety and Fidelity Insurance Company, and their Attorneys-in-Fact, Joseph Kuperus and William Gawron, Petitioners,

v.

Sidney H. WALKER, Waltraut M. Walker and Kathy Walker, Respondents,

and also concerning The PEOPLE of the State of Colorado,

v.

Rodney Hugh WALKER.

No. 83SC150.

Supreme Court of Colorado,
En Banc.

June 25, 1984.

Agee & Ewing, Ron E. Ewing, Colorado Springs, for petitioners.

Kirkman, Henley & Pelican, Steven T. Pelican, Colorado Springs, for respondents.

KIRSHBAUM, Justice.

Petitioners, sureties on a bond issued in favor of defendant, Rodney Hugh Walker, appeal the judgment of the Court of Appeals, *People* v. *Walker*, 665 P.2d 154 (Colo.App.1983), reversing the trial court's denial of respondents' request for a refund of bond premium. We affirm.

I

On November 13, 1980, defendant was arrested on the charge of first degree murder, in violation of section 18–3–102, 8 C.R.S. (1978). Defendant immediately was taken before a district court judge, who ordered defendant held without bail pending further proceedings. On November 18, 1980, defendant filed a motion to set bail.

On November 21, 1980, the El Paso County Grand Jury returned an indictment charging defendant with one count of first degree murder, one count of felony murder, two counts of first degree sexual assault and two counts of crime of violence. That same day a hearing was conducted by the trial court, during which proceeding defendant requested bail of $15,000. The People opposed any amount of bail, and offered to introduce into evidence the testimony of three police detectives to establish that the proof was evident or that the presumption was great that defendant had committed first degree murder. *See* § 16–4–101, 8 C.R.S. (1983 Supp.). The trial court denied the request to present evidence, observing that it was familiar with the case as a result of having issued search and arrest warrants at an earlier time. The trial court then set bail at $100,000 and the case was continued to November 26, 1980.

At the November 26 hearing, the People again opposed any bail. The trial court stated that bail would remain at $100,000 and continued the matter to December 19, 1980, the date upon which the transcript of the grand jury proceedings was to be filed.

On December 15, 1980, defendant obtained a surety bond in the amount of $100,000 from petitioner, Continental Surety and Fidelity Insurance Company (Continental), and was released from custody. The bond guaranteed defendant's appearance in court on December 19, 1980, and for any other scheduled appearances. Respondents, Kathy Walker, Sidney H. Walker and Waltraut M. Walker, obtained issuance of the bond by paying a bond premium of $10,000 to Continental. In addition, Sidney H. Walker and Waltraut M. Walker signed indemnity agreements with Continental for the remaining $90,000.

On January 9, 1981, a further hearing was held concerning the issue of bail. The prosecution urged the trial court to revoke bail, arguing that the grand jury proceedings transcript established that the proof was evident or the presumption was great that defendant had committed the capital offense charged. The trial court agreed, revoked defendant's bail, and stated that at some later time it would determine whether under the circumstances any or all of the premium should be returned.

Defendant filed a motion for bond premium refund, and on July 29, 1981, the trial court denied the motion on the ground that under section 16–4–108(1)(c), 8 C.R.S. (1978), it had "no authority to order return of any portion of the bond premium when ... the court revokes the bond ...." The trial court ruled further that "the termination of the bond was by review of the court's order and not by any failure to perform the conditions [of bond] or by any action of the bondsman."

On August 20, 1981, respondents filed a motion for reconsideration of the order denying return of the bond premium. At the

hearing on this motion, the trial court affirmed its earlier ruling.

The Court of Appeals reversed the trial court's ruling, concluding that section 16–4–108(1)(c) is ambiguous and that the General Assembly intended to authorize trial courts to order refunds of bond premiums in any set of circumstances to prevent unjust enrichment. The Court of Appeals also rejected respondents' contention that the initial order permitting bail was void *ab initio*.

## II

Section 16–4–108(1)(c), 8 C.R.S. (1978), provides as follows:

(1) Any person executing a bail bond as principal or as surety shall be exonerated as follows:

. . . .

(c) Upon surrender of the defendant into custody at any time before a judgment has been entered against the sureties for forfeiture of the bond, upon payment of all costs occasioned thereby. A surety may seize and surrender the defendant to the sheriff of the county wherein the bond is taken, and it is the duty of the sheriff, on such surrender and delivery to him of a certified copy of the bond by which the surety is bound, to take the person into custody and, by writing, acknowledge the surrender. If a compensated surety is exonerated by surrendering a defendant prior to the appearance date fixed in the bond, the court, after a hearing, may require the surety to refund part or all of the bond premium paid by the defendant if necessary to prevent unjust enrichment.

This provision is but one portion of a comprehensive statutory scheme adopted by the General Assembly establishing the circumstances under which a person may be released from custody on bail pending adjudication at trial of the criminal charges filed against such person. §§ 16–4–101 to –111, 8 C.R.S. (1978 & 1983 Supp.). The General Assembly has also adopted standards regulating the granting or denial of bail to a person who has been convicted at trial. §§ 16–4–201 to –205, 8 C.R.S. (1978 & 1983 Supp.). These provisions establish specific criteria to be applied uniformly to particular questions about bail which may arise during the pendency of criminal proceedings.

■ It is apparent from a review of these provisions that the General Assembly has not attempted to regulate all circumstances which might arise with regard to bail proceedings. For example, many of the relationships between sureties and principals are governed by common law principles of contract and equity, and those relationships can be varied and complex. The legislature has acted selectively, not inclusively, in its regulation of bail proceedings under the Criminal Code.

Section 16–4–108(1)(c) addresses one narrow question concerning judicial authority to order the return of all or part of bond premiums paid to a surety, and has recognized the availability of such remedy in the context of a situation in which the surety surrenders the defendant to the court prior to a fixed appearance date. Concededly, that set of circumstances is not present here. Thus, whether the statute be considered ambiguous, as the Court of Appeals concluded, or whether it be deemed silent regarding the factual complexities of this case, the basic question of the trial court's authority to order the refund of some or all of the paid premiums in these particular circumstances is not answered by the statute.

This court previously has considered the general authority of trial courts to determine questions relating to bail in criminal proceedings. In *People v. Sanders*, 185 Colo. 153, 522 P.2d 735 (1974), we held that the power to grant bail is incident to a court's common-law authority to determine cases and controversies. More particularly, we stated:

"The power to take bail is incident to the power to hear and determine, or to commit, and hence it may be stated as a general rule that any court or magistrate that has jurisdiction to try a prisoner in

any case has jurisdiction to discharge him, and, a fortiori, to admit him to bail, *subject, however, to such regulations or limitations as may be imposed by statute ....*"

*Id.* at 156, 522 P.2d at 736 (quoting *Bottom v. People,* 63 Colo. 114, 116, 164 P. 697, 698 (1917)) (emphasis in original). As we have indicated, section 16–4–108(1)(c), 8 C.R.S. (1978), presents no limitations upon the trial court's inherent control over the granting of bail except in the limited circumstances there defined, and no other statute has been cited as having any bearing on the issue here presented.

█ Judicial authority to "take bail" has long been recognized in England as a means of assuring "the orderly functioning of the judicial process." Meyer, *Constitutionality of Pretrial Detention,* 60 Geo. L.J. 1139, 1175 (1972). As a consequence of growing concern in the American colonies for the strengthening of the protections of persons accused of crime, a trend to limit by legislation the discretion of judges to deny bail in noncapital cases developed. *Id.* at 1178. Nevertheless, as we noted in *Sanders,* the authority of the trial court to grant bail remains a necessary ingredient of the court's ability to conduct judicial proceedings in criminal cases.

█ A trial court's common-law authority to conduct judicial proceedings necessarily includes the authority to correct errors of law made during the course of such proceedings. *See Stephens v. Wheeler,* 60 Colo. 351, 153 P. 444 (1915). *See also* C.R.C.P. 59(a)(7); Crim.P. 33, 34 and 35. In this case, the trial court concluded that it had made an error of law in granting bail to defendant. In correcting that self-proclaimed error, it did not lose its inherent authority to reconsider the conditions of bail it had previously established. While questions concerning restitution of premium payments might also be addressed in the context of civil litigation, *see Carver v. Rader,* 531 S.W.2d 114 (Tenn.

App.1975), we find no statutory restriction on the authority of trial courts in conducting criminal proceedings to consider the question of refunding premium payments made as a result of a ruling found erroneous as a matter of law. Thus, we agree with the Court of Appeals that the trial court erred in concluding that it lacked authority to order a refund of some or all of the premium payment made to the surety as a result of the trial court's erroneous grant of bail.

### III

Respondents also contend that the bail bond contract they executed on December 15, 1980, is void because the trial court exceeded its jurisdiction in setting bail on November 21, 1980. They argue that if the trial court had permitted the People to present the proffered testimony of the three police detectives, the trial court would have concluded that defendant was not entitled to bail. From this premise, respondents conclude that the trial court lacked jurisdiction to grant bail on November 21, 1980.

█ Article II, Section 19, of the Colorado Constitution confers an absolute right to bail in all cases other than cases alleging the commission of a capital offense. *Gladney v. District Court,* 188 Colo. 365, 535 P.2d 190 (1975). In this class of cases, bail must be denied if the prosecution establishes that the *proof is evident* or the *presumption great* that the accused committed the crime charged. *People v. District Court,* 187 Colo. 164, 529 P.2d 1335 (1974).

█ In the absence of a stipulation or other specific circumstances, a trial court must hold a hearing to determine whether the proof is evident or the presumption great that the accused committed the capital offense charged before denying a request for bail. *Shanks v. District Court,* 153 Colo. 332, 385 P.2d 990 (1963). *See also People ex rel. Dunbar v. District Court,* 179 Colo. 304, 500 P.2d 358 (1972).[1]

---

**1.** In *Gladney v. District Court,* 188 Colo. 365, 535 P.2d 190 (1975), we indicated that the burden of

proof upon the People to establish such fact was greater than probable cause but less than the

In this case, the trial court held a hearing on November 21, 1980, to consider defendant's motion for bail. At that hearing, the People expressly opposed the granting of bail. The denial of the People's request to introduce testimony of police detectives was based on the trial court's opinion that it already knew sufficient facts about the case from its participation in the issuance of search and arrest warrants. The trial court subsequently concluded that the denial of the People's request was erroneous as a matter of law—a conclusion with which we agree. However, the fact that the trial court committed error does not support respondents' argument. The trial court did have jurisdiction to consider the matter of bail at the November 21, 1980, bail hearing. *See Shanks v. District Court, supra. Cf. Lucero v. District Court,* 188 Colo. 67, 532 P.2d 955 (1975) (trial court is without jurisdiction to deny bail pursuant to section 16–4–101 *at probable cause hearing*). While its decision on that date was erroneous, it was not void. *See, e.g., People ex rel. Green v. Court of Appeals,* 27 Colo. 405, 61 P. 592 (1900). *Cf. Stephenson v. District Court,* 629 P.2d 1078 (Colo.1981) (trial court directed to *vacate* existing order remanding defendant to custody where such order was issued erroneously). The Court of Appeals so found, and we agree.

The judgment of the Court of Appeals is affirmed. The case is remanded to that court with directions to remand to the trial court for further proceedings consistent with this opinion.

standard of beyond a reasonable doubt required for conviction.