2015 CO 2

**In re: The PEOPLE of the State of Colorado, Plaintiff**

v.

**Michael F. BLAGG, Defendant.**

**Supreme Court Case No. 14SA268**

Supreme Court of Colorado.

January 12, 2015

Attorney for Plaintiff: Pete Hautzinger, District Attorney, Twenty-first Judicial District, Grand Junction, Colorado.

Attorneys for Defendant: Douglas K. Wilson, Public Defender, Brian N. Connors, Deputy State Public Defender, Tina Fang, Deputy State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado.

JUSTICE HOOD delivered the Opinion of the Court.

¶1 Over ten years ago, a jury convicted Michael Blagg of first degree murder for

killing his wife. The trial court sentenced him to a mandatory term of life in prison without parole. Years later, because of revelations about juror misconduct, the trial court granted Blagg a new trial. In doing so, the court concluded that it was required to restore the entire status quo ante, including the amount and terms of bond. After setting a new bond hearing, but before that hearing occurred, the court reinstated the $500,000 cash or surety bond it had set before Blagg's first trial. Because the trial court dispensed with the hearing, neither party had the chance to argue changed circumstances and the alleged victim's family did not have the opportunity to be heard. The district attorney contended that this violated the Victims' Rights Act ("VRA"), Colo. Const. art. II, § 16a, and moved for an emergency stay of the court's order. The trial court denied this motion. The district attorney then petitioned this court, under C.A.R. 21, to direct the trial court to set a bond hearing providing notice and an opportunity to be heard to the alleged victim's family. We issued an order to show cause, which we now make absolute.

¶ 2 We hold that when a trial court grants a motion for new trial, the defendant is restored to the bond status that existed upon the filing of charges. In a capital case, this requires that the court hold the defendant without bond until he requests admission to bail. Once requested, the court must set a hearing at which the district attorney may seek to have bail denied because the proof is evident or presumption great. Even if the district attorney does not contend the proof is evident or presumption great, the court must still hold a hearing to set bail. In either circumstance, because such a hearing is a "critical stage" as defined by the VRA enabling legislation, the alleged victim (or the alleged victim's family if the alleged victim is deceased) has the right to be present and heard at the bond hearing.

## I. Facts and Procedural History

¶ 3 After Blagg's arrest for first degree murder in June 2002, the trial court initially set bond at $1,000,000. In December 2002, the trial court lowered bond to $500,000 cash or surety. As conditions of bond, the court required Blagg to surrender his passport to the court and prohibited him from leaving Colorado, other than to reside with his mother in Georgia with written consent of any surety. He posted bond, which remained in effect until his conviction in 2004.

¶ 4 In post-conviction proceedings, Blagg alleged juror misconduct. After a multi–day hearing, the trial court agreed that misconduct had occurred but initially denied the motion for new trial. Blagg later learned of further misconduct by the same juror, so he supplemented his original motion. On June 11, 2014, after another multi-day hearing, the trial court granted Blagg a new trial.[1]

¶ 5 On September 4, 2014, the trial court formally vacated Blagg's judgment of conviction and sentence. Defense counsel requested that the court set a bond hearing on October 27, 2014. The district attorney then asked what bond would be until that hearing. Defense counsel noted that it had been $500,000 until the verdict, but explained, "I don't know whether ... it makes sense for the Court to reinstate that or not, at this point. But I guess that would be our request." The district attorney objected:

> I think this is something that needs to be addressed in a more thorough and evidentiary fashion at the hearing on the 27th. I'd have [a] major objection to reinstituting the $500,000 bond, because my position is that things [have] changed significantly since then. So I think he should be held without bond until the Court has an opportunity to conduct a thorough bond hearing and decide exactly what the bond should be set at.

The court responded that it would issue an order within the next 48 hours regarding bond until the October 27, 2014 bond hearing.

---

1. The court concluded that the juror had lied during voir dire about her previous experience with domestic violence. This, coupled with her "agenda" about the case, as evidenced by her Facebook post that she was "fighting for [t]his beautiful family, Jennifer and Abby Blagg," led the court to conclude that Blagg had been denied a fair trial. It thus granted Blagg's motion for new trial. The district attorney did not appeal that order.

¶ 6 That same day, the court issued its written order. It reached three significant conclusions: (1) Blagg is constitutionally entitled to bond pending retrial; (2) waiting another six weeks before setting bond does not satisfy Blagg's right to be brought before the court forthwith to set bond under section 16–4–102, C.R.S. (2014); and (3) the order granting a new trial and vacating his sentence and judgment "return[s] this case to its legal posture before trial," which "includes bond set on December 24, 2002" with the same specified conditions.

¶ 7 The district attorney quickly filed an emergency request for a stay of the court's order based on noncompliance with the VRA. The next day, defense counsel responded that the court had set an initial bond, and thus, the court's action did not implicate the VRA. On September 5, 2014, the court denied the district attorney's motion. The court ruled that it "did not set bond, reduce bond or modify bond." Rather, the court characterized its September 4th order as "simply express[ing] [its] opinion that, by virtue of granting Defendant a new trial and vacating his convictions and sentences, this case was returned to the *status quo ante.* This included bond set at $500,000 cash or surety."

¶ 8 On September 6, 2014, the district attorney petitioned this court for relief under C.A.R. 21 and sought a stay of the court's order. We issued our order to show cause.

## II. Analysis

¶ 9 The district attorney argues that Blagg waived his right to have bond set "forthwith" when defense counsel requested a half-day hearing to be set in late October. He also asserts that the hearing is not the initial setting of bond because the bond was set in 2002. Rather, it is "actually the setting of a second bond, since original bonds had been set prior to Defendant's conviction." While acknowledging the VRA does not expressly address this situation, the district attorney argues that the trial court's order setting bond at the former amount without a hearing and without victim participation is "an affront to the *spirit* of the victim rights amendment and enabling statutes." He further

argues that the order "is an affront to the bond statutes that *require* the court's consideration of current information."

¶ 10 Blagg responds that the trial court's bail decision was neither an abuse of discretion nor a violation of the VRA or its enabling legislation. He asserts that the VRA does not address this specific situation, no case law in this state has applied the VRA to this situation, and to deny him bail based on the VRA would be improper.

### A. Standard of Review

 ¶ 11 We generally review the setting of bail for abuse of discretion. *See, e.g., Balltrip v. People,* 157 Colo. 108, 113, 401 P.2d 259, 262 (1965). But here, we consider a question of statutory interpretation subject to de novo review. *People v. Baez-Lopez,* 2014 CO 26, ¶ 13, 322 P.3d 924, 927.

### B. Bail

 ¶ 12 Article II, section 19 of the Colorado Constitution gives the criminally accused the right to a bail bond, pending adjudication of the charges against him: "All persons shall be bailable by sufficient sureties pending disposition of charges." This right, however, does not apply in capital cases "if the prosecution establishes that the proof is evident or the presumption great that the accused committed the crime charged." *Yording v. Walker,* 683 P.2d 788, 791 (Colo.1984); *see also* Colo. Const. art. II, § 19(1)(a) ("All persons shall be bailable by sufficient sureties pending disposition of charges except ... [f]or capital offenses when the proof is evident or presumption is great."); *Orona v. Dist. Court,* 184 Colo. 55, 58, 518 P.2d 839, 840 (1974) ("The mere fact that an information has been filed—or for that matter that the defendant has been bound over for trial—is not equivalent to a determination that the proof of guilt is evident or the presumption is great."). First degree murder is a capital offense, even in a case where the death penalty is not at issue. *See Tribe v. Dist. Court,* 197 Colo. 433, 434–35, 593 P.2d 1369, 1370–71 (1979).

 ¶ 13 It is incumbent upon a defendant charged with a capital offense to request that

the court set bail. *See* § 16–4–101(3), C.R.S. (2014) ("In any capital case, the *defendant* may make a written motion for admission to bail upon the ground that the proof is not evident or that presumption is not great, and the court shall promptly conduct a hearing upon such motion." (emphasis added)). Once the defendant requests admission to bail, the court must hold a hearing to set bond, and at that hearing, if the district attorney objects to bail being set, the prosecution must establish that the proof is evident or presumption great. *Id.; see also Shanks v. Dist. Court,* 153 Colo. 332, 337, 385 P.2d 990, 992 (1963) (holding that where a defendant charged with a capital offense requests that the court set bail, the court has a duty to hold a proof evident/presumption great hearing and rule on the evidence presented). Thus, the court must hold a defendant charged with a capital offense without bond until he requests bond in writing and the bond hearing takes place.

■ ¶ 14 When, as here, a trial court grants a new trial, it restores the status quo before the previous trial, in the sense that it vacates the judgment of conviction. *See People v. Campbell,* 738 P.2d 1179, 1181 (Colo. 1987) ("When a motion for a new trial is granted, the issues stand undisposed of as if the case had never been tried." (internal quotation marks omitted)), *superseded by statute on other grounds as stated in People v. Vance,* 933 P.2d 576, 577 n.2 (Colo. 1997).[2] The defendant is once again presumed innocent and cloaked in the pre-trial procedural rights associated with ensuring due process. In a capital case where the prosecution elects to retry the case, the defendant is once again to be held without bond until he requests admission to bail and the district attorney has the opportunity to request a proof evident/presumption great hearing.

■ ¶ 15 A new trial, however, does not automatically entitle the defendant to restoration of the bond that existed at the time of the first trial. Indeed, once a judgment of conviction enters, bond is discharged. *See* § 16–4–201(1)(c), C.R.S. (2014) (an existing bond "shall not be continued in effect following . . . conviction [pending sentencing] unless the written consents of the sureties, if any, are filed with the court"); *People v. Hernandez,* 902 P.2d 846, 848 (Colo. App. 1995) (stating that surety is discharged from bond upon a defendant's conviction). And here, Blagg was ineligible for a post-trial bond based on the nature of his conviction. *See* § 16–4–201.5(1)(a), C.R.S. (2014) ("[N]o bail is allowed for persons convicted of . . . [m]urder."). Thus, when the trial court granted the motion for new trial, there was no bond to be restored and the statutory framework once again required that he be held without bond.

¶ 16 Upon written application, Blagg is entitled to a bond hearing. But the same terms and conditions may no longer be appropriate after considering the statutory factors governing bond determination. *See* § 16–4–103(5), C.R.S. (2014) (identifying relevant factors). Here, for example, Blagg's mother has since passed away, changing "[t]he nature and extent of family relationships of the person in custody." § 16–4–103(5)(b). The passage of time also has changed, among other factors, Blagg's employment history, "past and present residences," "character and reputation," and certainly "facts tending to indicate that the person in custody has strong ties to the community and is not likely to flee the jurisdiction." § 16–4–103(5)(a), (c)–(d), (j). These changed circumstances are for the trial judge to consider on remand.

## C. The VRA

■ ¶ 17 Blagg's request for bond also triggers the VRA and its enabling legislation. The VRA applies to specified crimes, including first degree murder. § 24–4.1–302(1)(a), C.R.S. (2014). Because Blagg was charged with first degree murder, the VRA applies to this case.

**2.** *See also United States v. Recio,* 371 F.3d 1093, 1105 n.11 (9th Cir. 2004) (noting when the trial court granted defendants' motion for new trial, it "rendered [their] initial conspiracy convictions legal nullities"); *Cottman v. State,* 395 Md. 729, 912 A.2d 620, 622 (2006) ("The effect of granting a new trial was to vacate the original judgment and conviction."); *cf. United States v. Ayers,* 76 U.S. 608, 610, 9 Wall. 608, 19 L.Ed. 625 (1869) ("[T]he order granting the new trial has the effect of vacating the former judgment.").

¶ 18 The VRA provides that "[a]ny person or such person's designee, legal guardian, or surviving immediate family members if such person is deceased, shall have the right to be heard when relevant, informed, and present at all *critical stages* of the criminal justice process." Colo. Const. art. II, § 16a (emphasis added). The VRA empowers the General Assembly to define "[a]ll terminology, including the term 'critical stages.' "[3] *Id.*

¶ 19 The term "critical stages" includes the stage at which, "[i]n a case involving a capital offense, the court grants the defendant's motion for admission to bail pursuant to section 16–4–101(3), C.R.S." § 24–4.1–302(2)(c)(I)(E), C.R.S. (2014). The General Assembly also established that "[i]n order to preserve and protect a victim's rights to justice and due process, each victim of a crime shall have" a number of specified rights, including "[t]he right *to be heard* at any court proceeding . . . [i]nvolving the defendant's bond as specified in section 24–4.1–302(2)(c)." § 24–4.1–302.5(d)(I), C.R.S. (2014) (emphasis added). Therefore, under the VRA, the alleged victim's family in a first degree murder case has the right to be present and heard when the court contemplates setting bail.

¶ 20 Blagg notes that "[t]he initial setting of a bond, whether set by the court at the first appearance or by another entity authorized to do so prior to the first appearance," does "not constitute a bond reduction or modification" and thus is not a critical stage at which the alleged victim has a right to be present and heard. § 24–4.1–302(2)(c)(II)(A), C.R.S. (2014). But in a first degree murder case, when the conviction has been vacated and the defendant requests that bail be set, "[a]ny court action" implicating "the defendant's motion for admission to bail pursuant to section 16–4–101(3)" is a "critical stage" at which the alleged victim—

or the alleged victim's family if the alleged victim is deceased—has a right to be present and heard. § 24–4.1–302(2)(c)(I)(E).

 ¶ 21 This is true even if the prosecution does not attempt to demonstrate that the proof is evident or presumption great because it is still a "court action" involving bond for a defendant charged with a capital offense. Consequently, the hearing to consider setting bond triggers the alleged victim's surviving family members' right under the VRA to be present and heard at the bond hearing.[4]

### III. Conclusion

¶ 22 We hold that when a trial court grants a motion for new trial, the defendant is restored to the bond status that existed upon the filing of charges. In a capital case, this requires that the court hold the defendant without bond until he requests admission to bail. Once requested, the court must set a hearing at which the district attorney may seek to have bail denied because the proof is evident or presumption great. Even if the district attorney does not contend the proof is evident or presumption great, the court must still hold a hearing to set bail. In either circumstance, because such a hearing is a "critical stage" as defined by the VRA enabling legislation, the alleged victim (or the alleged victim's family if the alleged victim is deceased) has the right to be present and heard at the bond hearing. Because no hearing took place, we make absolute our rule to show cause, vacate the court's order reinstating the last pre-trial bond, and remand for a hearing to set bail at which the alleged victim's family has the right to be present and heard.

---

**3.** The enabling legislation also defines "victim" as "any natural person against whom any crime has been perpetrated or attempted." § 24–4.1–302(5), C.R.S. (2014). But "if such person is deceased or incapacitated, the person's spouse, parent, legal guardian, child, sibling, grandparent, grandchild, significant other, or other lawful representative" is the victim for VRA purposes. *Id.*

**4.** The VRA does not give legal standing to an alleged crime victim. *See Gansz v. People,* 888 P.2d 256, 258–59 (Colo. 1995). But the enabling legislation identifies a bond hearing for a person charged with a capital offense as a critical stage in the criminal proceeding. This shows that the General Assembly determined that the victim or the deceased victim's family has a right to be present and heard because "a victim's input would be relevant, and, therefore, . . . a right to be heard would be appropriate." *Id.* at 258.