The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 4, 2026

## 2026 COA 48

**No. 25CA2183, *People v. Rodriguez-Nunez* — Crimes — Murder in the First Degree; Criminal Law — Release on Bail — Setting and Selection of Type of Bond — Types of Bond Set by Court; Constitutional Law — Colorado Constitution — Right to Bail — Proof Evident Exception**

A division of the court of appeals considers whether the district court's imposition of a cash bond that amounted to a de facto no-bond hold violated the right to bail for a defendant charged with first degree murder after deliberation.  The division concludes that the proof evident exception to the right to bail did not apply to the defendant because he was charged with committing the offense in 2021, which was after the abolition of the death penalty in 2020 eliminated the proof evident exception under *People v. Smith*, 2023 CO 40, but before the voters restored the exception for first degree murder by constitutional amendment in 2024.

Accordingly, the division grants the petition for review and remands the matter for further hearing.

COLORADO COURT OF APPEALS       **2026 COA 48**

---

Court of Appeals No. 25CA2183
Weld County District Court No. 25CR960
Honorable Annette Kundelius, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Moises Rodriguez-Nunez,

Defendant-Appellant.

---

PETITION GRANTED AND CASE
REMANDED WITH DIRECTIONS

Division A
Opinion by JUDGE KUHN
Grove and Yun, JJ., concur

Announced June 4, 2026

---

Michael J. Rourke, District Attorney, Ash McCuaig, Deputy District Attorney, Blake Madone, Deputy District Attorney, Greeley, Colorado, for Plaintiff-Appellee

Daniel King, Alternate Defense Counsel, Arvada, Colorado; Andrew Sidley-MacKie, Alternate Defense Counsel, Fort Collins, Colorado, for Defendant-Appellant

¶ 1 Defendant, Moises Rodriguez-Nunez, was indicted on one count of first degree murder after deliberation for a homicide committed in 2021.[1] *See* § 18-3-102(1)(a), C.R.S. 2025. Following Rodriguez-Nunez's arrest, the trial court set bond. But the court made its bond determination during a period of flux surrounding Colorado's constitutional right to bail.

¶ 2 Though the Colorado Constitution generally guarantees an absolute right to bail for people accused of committing crimes until the disposition of charges against them, it also contains an exception for "capital offenses" when proof is evident or the presumption is great that the accused committed the crime. Colo. Const. art. II, § 19(1). In 2020, the General Assembly abolished the death penalty, taking the proof evident exception with it. In 2024, voters amended the constitution to restore the proof evident exception for first degree murder charges.

---

[1] Rodriguez-Nunez was sixteen years old at the time of the alleged offense. The prosecution charged him as an adult by filing in the district court the grand jury indictment and a notice of direct filing under section 19-2.5-801(1)(a), C.R.S. 2025.

¶ 3    In the interim, Rodriguez-Nunez unsuccessfully moved to modify his bond.  He now petitions under section 16-4-204(1), C.R.S. 2025, for review of the district court's order denying his request for bond modification.  We hold that the proof evident exception does not apply to a defendant accused of first degree murder for a homicide charged after the death penalty was abolished but committed before the proof evident exception was restored.  Such a defendant is entitled to bail on terms set by the district court.  Accordingly, we grant the petition and remand the matter for further hearing.

## I.    Background

¶ 4    Because the period of flux surrounding the right to bail frames this appeal, we briefly summarize the key developments in case law during the last several years.

¶ 5    Article II, section 19 of the Colorado Constitution confers an absolute right to bail for most criminal defendants, pending resolution of the charges against them.  *People v. Blagg*, 2015 CO 2, ¶ 12; *Yording v. Walker*, 683 P.2d 788, 791 (Colo. 1984).  However, this right doesn't apply to those defendants charged with a capital offense when proof is evident or the presumption is great that the

accused committed the charged crime. Colo. Const. art. II, § 19(1)(a); *Blagg*, ¶ 12.

¶ 6        This proof evident exception for capital offenses was eliminated when the General Assembly repealed the death penalty for offenses charged on or after July 1, 2020. § 16-11-901, C.R.S. 2025; *see* Ch. 61, sec. 1, § 16-11-901, 2020 Colo. Sess. Laws 204. Following that repeal, the Colorado Supreme Court in *People v. Smith* determined that the phrase "capital offenses" means offenses punishable by the death penalty. 2023 CO 40, ¶ 31. Under *Smith*, *all* criminal defendants, even those charged with first degree murder, had the right to bail for offenses charged on or after July 1, 2020. *Id.* at ¶¶ 32, 45.

¶ 7        The General Assembly responded to *Smith* by referring to voters what would become Amendment I. *See* H. Con. Res. 24-1002, 74th Gen. Assemb., 2d Reg. Sess., 2024 Colo. Sess. Laws 4362 (effective upon proclamation by the Governor, Dec. 17, 2024). This constitutional amendment, which voters approved, restored the proof evident exception to the right to bail for persons accused of "the offense of murder in the first degree." *Id.*; Colo. Const. art. II, § 19(1)(d). The amendment applies only to offenses "committed

3

on or after [the amendment's] effective date" of December 17, 2024. H. Con. Res. No. 24-1002; Colo. Exec. Order No. D 2024 020 (Dec. 17, 2024). Consequently, a person charged with first degree murder after the death penalty's repeal on July 1, 2020, but who committed the offense before Amendment I took effect on December 17, 2024, retains the right to bail.

¶ 8 Here, Rodriguez-Nunez is accused of an offense that he allegedly committed in Greeley in 2021. The district court initially set a $5 million cash bond. Defense counsel applied for a reduction in the bond amount and a change to the bond type. However, based on the indictment, the facts of the case, and the presumed intent of Amendment I, the district court denied the request.

## II.  Analysis

¶ 9 Rodriguez-Nunez contends that the district court abused its discretion by refusing to modify his bond. He claims that the court improperly (1) relied on legislative intent in contradiction to *Smith*; (2) violated his constitutional rights by setting a bond that de facto denied his right to bail; and (3) failed to make sufficient factual findings to support the selected bond amount and type. Rodriguez-Nunez further contends that we should hold that the prosecution

4

must provide "clear and convincing evidence that an unattainable monetary bond condition is necessary to reasonably assure appearance or public safety."

## A. Standard of Review

¶ 10 Under section 16-4-204(1), a defendant may seek appellate review of, among other things, a bond modification order. *See* § 16-4-109, C.R.S. 2025. We review bail bond determinations for an abuse of discretion. *Smith*, ¶ 18. "A [district] court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *Id.* (quoting *People v. Johnson*, 2021 CO 35, ¶ 16).

¶ 11 "We review issues of statutory or constitutional interpretation de novo." *People v. Lewis*, 2024 CO 57, ¶ 10. "In construing a statute, our fundamental responsibility is to ascertain and give effect to the General Assembly's intent." *Id.* "In so doing, we look to the plain and ordinary meaning of the statutory language, and we construe the statute to further the legislative intent represented by the statutory scheme." *Id.* (quoting *People v. Steen*, 2014 CO 9, ¶ 9); *see also Davidson v. Sandstrom*, 83 P.3d 648, 654 (Colo. 2004) ("Courts must give words their ordinary and popular meaning in

order to ascertain what the voters believed the amendment to mean when they adopted it."). "If the statutory language is unambiguous, we apply it as written." *People v. Day*, 2026 CO 16, ¶ 23.

### B. Applicable Statutory Law

¶ 12 A district court must determine a bond's type, its conditions, and any modifications or reductions according to the requirements of section 16-4-103, C.R.S. 2025. Under this statute, a court's bond determination must be "sufficient to reasonably ensure the appearance of the person as required and to protect the safety of any person or the community, taking into consideration the individual characteristics of each person in custody, including the person's financial condition." § 16-4-103(3)(a). Further, a court must "[p]resume that all persons in custody are eligible for release on bond with the appropriate and least-restrictive conditions." § 16-4-103(4)(a). When making this determination, a court may consider certain criteria specified by the statute, which include (in relevant part) an accused person's employment status and history, family relationships, past and present residences, likely sentence considering the nature of the charged offense, and indications of strong community ties and likelihood to flee. § 16-4-103(5).

6

¶ 13    Section 16-4-104, C.R.S. 2025, provides the types of bond a court may select, and a court may set a bond secured with monetary conditions "when reasonable and necessary to ensure the appearance of the person in court or the safety of any person or persons or the community." § 16-4-104(1)(c); *see also* § 16-4-103(4)(a) ("A monetary condition of release must be reasonable . . . ."). An accused person may choose to post a monetary bond using a cash deposit, real estate equity, surety, or bail bonding agent. § 16-4-104(1)(c)(I)-(IV). However, a court may require a certain method for executing a monetary bond if the court "makes factual findings on the record" that the method "is necessary to ensure the appearance of the person in court or the safety of any person, persons, or the community." § 16-4-104(1)(c).

## C.    Additional Facts

¶ 14    In July 2025, the district court initially set a $5 million cash bond without hearing arguments from either party, and it

scheduled a bond modification hearing for September 2025.[2] At that hearing, defense counsel requested that the court significantly reduce the bond amount and allow the use of alternatives to cash for posting bond. Counsel argued that a $5 million cash bond was prohibitive to anyone, effectively functioning as a no-bond hold. Counsel also asserted that a bond reduction was justified by Rodriguez-Nunez's circumstances and ties to the community, which were alleged as the following:

- Rodriguez-Nunez, twenty years old as of the hearing, had resided in Greeley his entire life;

- his family was in Greeley;

- he was married and had a daughter, whom he helped care for;

- he was employed with two jobs;

---

[2] At the initial hearing, defense counsel informed the district court that he was not prepared to present a full argument on bond. He asked the court to schedule a bond modification hearing, giving counsel an opportunity to prepare arguments. Counsel otherwise deferred to the court regarding the setting of the initial bond type and amount. Rodriguez-Nunez's petition does not contest the district court's initial bond determination; therefore, we address only the court's denial of Rodriguez-Nunez's bond modification request. *See* § 16-4-109, C.R.S. 2025.

- he didn't have significant financial resources;

- he was attending school; and

- he had remained in Greeley since the victim's death and during the investigation into that death.

Based on these representations, defense counsel argued, "There's no indication that [Rodriguez-Nunez is] a danger to himself or a danger to the community if he's released on bond. There's every indication that he will appear in court as directed."

¶ 15    The prosecutor claimed that Amendment I showed that the General Assembly intended for the courts to set no-bond holds for persons accused of committing first degree murder — even though the amendment only operated prospectively. The prosecutor also claimed to have reviewed bond rulings in sixty-two cases involving first degree murder. This review purportedly revealed that courts in those cases had determined that cash bonds for millions of dollars were appropriate. Of those cases, the prosecutor cited four specific case numbers, claiming that they involved defendants around the same age as Rodriguez-Nunez and that those cases involved cash bonds set at either $2 million or $5 million. The prosecutor thus

asserted that a cash bond of $5 million was appropriate here given "the seriousness of the offense" and "the danger to the community."

¶ 16    Ultimately, in its ruling, the district court said, "[G]iven the information that I have in the indictment . . . the only reason that I would consider any modification is because of the defendant's age at the time."  The court referenced "the recent changes in legislati[on]" and reasoned that "if this was committed at a slightly different time, [Rodriguez-Nunez would] be held without bond."  The court concluded,

> I think it's clear that that's the legislative intent and so I think that bond is appropriate as set.  I understand it's effectively a no-bond hold.  I get that.  And that's going to be the decision of the [c]ourt today.  So I'm going to deny that request.  Bond will remain as set.

### D.    The District Court's Bond Determination Was an Abuse of Discretion

¶ 17    Rodriguez-Nunez contends that the district court erred by relying on legislative history and imposing an excessive bond that functioned as a de facto no-bond hold.  He also contends that the court failed to make sufficient determinations and factual findings to establish that a $5 million cash bond was necessary and

10

reasonable to ensure his court appearances or to protect the community. We agree.

¶ 18    First, the court erred by relying on the intent of the General Assembly — and ultimately the voters — to justify "effectively a no-bond hold." This approach misapplied the law because the court based its decision on an intent that is contrary to the amendment's plain language. Moreover, the court relied on suppositions about what would have happened if Rodriguez-Nunez had been charged as a juvenile or if he had been charged with a crime that was committed at a different time. Neither of these suppositions is a proper statutory factor for determining bond.

¶ 19    The court erred by assuming that the intent of Amendment I was to prohibit bail for first degree murders committed before the amendment was effective. The amendment unambiguously states that the denial of bail applies only to first degree murders "committed *on or after* the effective date" — December 17, 2024. Colo. Const. art. II, § 19(1)(d) (emphasis added). Therefore, the intent of voters, according to the plain language of Amendment I, couldn't have been that people accused of committing first degree murder *before* December 17, 2024, would lose their right to bail.

Accordingly, we conclude that a defendant accused of first degree murder for a homicide charged after the death penalty was abolished but committed before Amendment I took effect is entitled to bail.

¶ 20    As a result, the district court erred by explicitly setting a cash bond whose amount was so high that it functioned as a bond denial.  In other words, the court effectively applied the proof evident exception to Rodriguez-Nunez's case, misapprehended the intent of section 19, and violated both his constitutional right to bail and the statutory presumption in favor of bail.  *See id.*; § 16-4-103(4)(a); § 16-4-104(1)(c); *see also Altobella v. Dist. Ct.*, 385 P.2d 663, 664 (Colo. 1963) (holding "that the bond fixed by the court was grossly excessive and tantamount to a denial of the right of petitioner to be admitted to bail in a reasonable amount"); *State v. Brown*, 2014-NMSC-038, ¶ 53, 338 P.3d 1276, 1292

("Intentionally setting bail so high as to be unattainable is simply a[n] [improper] method of unlawfully denying bail altogether.").[3]

¶ 21    Second, the court didn't consider whether the type of bond selected would reasonably ensure Rodriguez-Nunez's appearance in court or protect the community. *See* § 16-4-103(3)(a). The court merely referenced the "information that [it] ha[d] in the indictment . . . [and] all of the other information in the case." Such references don't show consideration of Rodriguez-Nunez's individual characteristics or financial condition. *See* § 16-4-103(3)(a); *Stack v. Boyle*, 342 U.S. 1, 6 (1951) (Vinson, J., in chambers) ("To infer from the fact of indictment alone a need for bail in an unusually high amount is an arbitrary act."); *see also Brown*, ¶ 52, 338 P.3d at 1292 (holding that a court is not permitted to "put a price tag on a person's pretrial liberty based solely on the charged offense"). The only exception was the court's reference to Rodriguez-Nunez's *age at the time* of the alleged offense, but this reference failed to explain

---

[3] *State v. Brown*, 2014-NMSC-038, 338 P.3d 1276, involved a constitutional provision that mirrors Article II, section 19 of Colorado's constitution and circumstances similar to those here. Although not precedential, we find *Brown*'s historical analysis on bail illustrative and its well-reasoned opinion persuasive.

how age factored into ensuring his court appearances and community safety.[4]  *See* § 16-4-103(3)(a); *see also Palmer v. Dist. Ct.*, 398 P.2d 435, 438 (Colo. 1965) ("Bail should not be 'more than will be reasonably sufficient to prevent evasion of the law by flight or concealment'; it should be 'reasonably sufficient to secure the prisoner's presence at the trial.'" (quoting *In re Losasso*, 24 P. 1080, 1081-82 (Colo. 1890))).

¶ 22    Third, the court didn't make factual findings to support its selection of a certain type of monetary bond.  *See* § 16-4-104(1)(a).  Without findings, we cannot determine how the court's cash bond decision was "tailored to address a specific concern," § 16-4-103(4)(a), or "reasonable and necessary" to ensure Rodriguez-Nunez's appearance and community safety, § 16-4-104(1)(c).  Indeed, the record demonstrates that the district court refused the modification request without making meaningful findings regarding the relevant statutory factors.

---

[4] Age isn't one of the enumerated criteria for the court's consideration in determining a bond.  *See* § 16-4-103(5)(a)-(j), C.R.S. 2025.

¶ 23    Defense counsel represented that Rodriguez-Nunez had significant ties to the community through his residence, family, marriage, work, and school.  Furthermore, a pretrial services bail report indicated that Rodriguez-Nunez fell within the lowest category of measurable risk for nonappearance or continuing threat.  *See* § 16-4-103(3)(b) ("In determining the type of bond and conditions of release, . . . the court shall use an empirically developed risk assessment instrument designed to improve pretrial release decisions . . . based upon predicted level of risk of pretrial failure."); *see also People v. Sa'ra*, 117 P.3d 51, 56 (Colo. App. 2004) (holding that we can "take judicial notice of the contents of court records in a related proceeding").

¶ 24    By contrast, the prosecutor's arguments didn't adequately justify the bond imposed.  The prosecutor largely relied on

15

comparisons to other cases.[5] Although such comparisons aren't necessarily inappropriate in a bond hearing, the case comparisons provided little support for maintaining the bond because (1) only four of the sixty-two cases mentioned were identified by case number; (2) the four identified cases lacked comparative details beyond generalizations about similar offenses with similarly aged defendants; (3) the prosecutor didn't submit any written record of the cases; and (4) the court didn't take judicial notice of the cases or their facts.

¶ 25    Besides, these comparisons improperly implied that the charge of first degree murder alone justified setting a multi-million dollar cash bond. In other words, the prosecutor's claims didn't demonstrate how the monetary condition of a cash bond was

---

[5] The prosecutor also summarily referred to grand jury materials, claiming that a $5 million cash bond was appropriate because it "takes into account the danger to the community" shown by the grand jury testimony that "raise[d] substantial and significant community safety concerns" and a "prolific drug distribution enterprise." However, the parties agree that the district court didn't review or consider any information, other than the indictment, related to the grand jury. Accordingly, the grand jury materials do not factor into our determination.

16

tailored to address specific concerns about Rodriguez-Nunez.[6]  *See*

§ 16-4-103(4)(a); *see also Brown* ¶ 52; 338 P.3d at 1292 ("[J]udges

'should exercise care not to give inordinate weight to the nature of

the present charge in evaluating factors for the pretrial release

decision.'" (quoting ABA Standards for Criminal Justice: Pretrial

Release § 10-1.7 (3d ed. 2007))).

¶ 26     In sum, the district court (1) misapplied the law by incorrectly

assuming the intent of a prospective constitutional amendment

contrary to its plain language; (2) set the bond amount arbitrarily

based on that intent; and (3) failed to make necessary factual

findings supported by the record.  *See Smith*, ¶ 18; *see also People*

*v. Jones*, 489 P.2d 596, 598 (Colo. 1971) ("Protection of the accused

has been provided by rule and judicial mandates that require that a

court, in all instances, obtain facts which will provide a sound basis

for an intelligent and fair bail decision.").  Because the basis of the

district court's bond order is flawed and the record doesn't disclose

---

[6] We take no position on whether certain comparisons to other cases may be relevant for a bond determination depending on the other cases' level of detail, evidence presented, or judicial notice.

sufficient findings supporting the order, we must remand this matter for the court to hold a further hearing. *See* § 16-4-204(3)(a).

### E. Monetary Bonds Have No Unattainability Requirements

¶ 27 Rodriguez-Nunez also contends that we should hold that the district court's determination for a monetary bond must include considerations of *attainability*. He asserts that setting an unattainable monetary bond condition amounts to a deprivation of liberty, and thus, the prosecution should be required to provide clear and convincing evidence showing that the unattainability condition is necessary to reasonably ensure appearances or protect community safety. We aren't persuaded because the statutes don't impose such requirements.

¶ 28 Of course, the point of a bail bond is not to enrich the state's treasury but to ensure the defendant's appearance in court. *W. Sur. Co. v. People*, 208 P.2d 1164, 1166 (Colo. 1949). And where a court fails to tailor an unattainable monetary bond condition (or any other bond condition) to ensure an accused person's appearance and protect the community, the bond condition denies the accused their right to bail in violation of the constitution and

18

bail statutes.  *See Bandy v. United States*, 81 S. Ct. 197, 198 (1960) (Douglas, J., in chambers) ("It would be unconstitutional to fix excessive bail to assure that a defendant will not gain his freedom."); *see also Brown*, ¶ 54, 338 P.3d at 1293 ("Admission to bail always involves a risk that the accused will take flight.  That is a calculated risk which the law takes as the price of our system of[ ]justice." (quoting *Stack*, 342 U.S. at 8 (Jackson, J., specially concurring))).

¶ 29    But we see nothing in the constitution or bail statutes that categorically precludes unattainable monetary bond conditions. *See Jones*, 489 P.2d at 599 ("The right to bail does not amount to a guarantee that every defendant who is charged with a crime will be released without bail if he is indigent.").  Rather, a court may set monetary conditions — whether unattainable or attainable — so long as the court makes factual findings showing that the conditions selected are reasonable and necessary under the circumstances.  § 16-4-104(1)(c); *see* § 16-4-103(4)(a).  Specifically, the factual findings are sufficient if they show that the monetary amount is tailored to ensure the accused's appearance in court and prevent harm to the community.  *See* § 16-4-104(1)(c); *cf. People v.*

*Fallis*, 2015 COA 75, ¶¶ 7-8 (holding that a bond condition is reasonable because it was "narrowly tailored to address the[] legitimate state interest[]" of ensuring a defendant's appearance). Rodriguez-Nunez's contention amounts to a request for us to read into the statutory scheme unattainability conditions that don't exist in the statute's plain language, which we decline to do. *See Day*, ¶ 23.

## III.    Disposition

The petition is granted, and the case is remanded for further hearing consistent with this opinion. *See* § 16-4-204(3)(a).  The district court must consider the appropriate bail factors and make findings to support its bail ruling under section 16-4-104(1)(c).  The court may consider the use of nonmonetary conditions as less restrictive options for vindicating community safety concerns.  *See* § 16-4-103(4)(a); § 16-4-105(8), C.R.S. 2025; *Brown*, ¶ 42, 338 P.3d at 1290.

JUDGE GROVE and JUDGE YUN concur.